STATE OF CONNECTICUT *v.* JOSEPH STORLAZZI
(11398)

HEALEY, PARSKEY, SHEA, GRILLO and BORDEN, Js.

Argued April 7—decision released September 13, 1983

·*John J. Keefe, Jr.,* with whom, on the brief, was *Hugh F. Keefe,* for the appellant (defendant).

*Julia D. Dewey,* assistant state's attorney, and *Lawrence J. Fossi,* law student intern, with whom, on the brief, were *Arnold Markle,* state's attorney, and *Patrick J. Clifford,* assistant state's attorney, for the appellee (state).

BORDEN, J. The defendant was convicted of promoting prostitution in the first degree in violation of General Statutes § 53a-86 (a) (2); sexual assault in the second degree in violation of General Statutes § 53a-71 (a) (1); and risk of injury to a minor in violation of General Statutes § 53-21. He raises three issues on appeal: (1) violation of his rights of confrontation and to due process of law in the court's denial of access to certain psychiatric and social agency records of the victim; (2) error in the court's charge on the definition of cunnilingus as part of its charge on sexual assault in the second degree; and (3) error in the court's charge on both sexual assault in the second degree and risk of injury to a minor. We find no error.

It is not necessary to detail all the facts which the evidence would support. Suffice it to say that the jury could reasonably have found the following facts. On two days in September, 1977, at the defendant's apartment, the defendant, then age sixty-nine, and the victim, then age thirteen engaged in cunnilingus. On the second day she also had vaginal intercourse with two men called to the apartment by the defendant and was photographed by one of these men while engaged in cunnilingus with the defendant. Thereafter, until June,

1978, on various occasions at the defendant's apartment; the victim and the defendant engaged in cunnilingus; the defendant masturbated her with a vibrator; she engaged in sexual relations with numerous men who paid the defendant money which he told her he was holding to buy her a car for her sixteenth birthday; and the defendant took numerous pictures of her in the nude. Additional facts pertinent to the claimed errors on appeal are discussed below.

I

At the time of the trial the victim was age seventeen. After her relationship with the defendant ended, over a period of time before the trial she was treated and evaluated by various psychiatric, psychological and social agencies. These were the Hartford Institute of Living, the Clifford Beers Child Guidance Clinic (Clifford Beers), the Connecticut department of children and youth services and the Adolescent Crisis Unit for Treatment and Evaluation of St. Raphael's Hospital (ACUTE). Before trial the defendant subpoenaed the records of these agencies and moved to examine them for the purposes of inquiring into the victim's competence to testify, supporting his request for a psychiatric examination of the victim[1] and assisting in his cross-examination of her. The court ordered the records sealed, reviewed them in camera and denied the defendant access to them. After the victim testified on direct examination but before cross-examination the defendant renewed his motion for

---

[1] The defendant has not pursued on appeal the denial of his request for a psychiatric examination. While he does on appeal mention in passing the issue of testimonial competence, he does not press it seriously. The main thrust of his argument centers on the cross-examination issue. Furthermore, there is nothing in the trial transcript nor in the records at issue, which the trial court and we have examined, to suggest that either a preliminary determination of competency of the victim or a psychiatric examination was necessary or appropriate.

access to the records. The court, having already read the records and having heard the victim's testimony, again denied the defendant access to them.

The defendant claims first that denial of access to the victim's records violated his sixth amendment right of confrontation. He argues that where the state's case rests on a key witness and where the defense amounts to an attack on that witness' credibility[2] he is entitled to access to that witness' records of psychiatric, psychological and social agency treatment and evaluation for possible use in cross-examination. Alternatively, he urges this court to examine the records to determine if he was prejudiced by denial of access to them. The state agrees with this alternate position. We reject the defendant's claim of entitlement of access to the records; we agree that we must review the trial court's determination by examining the records ourselves; and we conclude that the court did not violate the defendant's right of confrontation by denying him access to the records.[3]

---

[2] The defendant did not testify and presented evidence bearing only on the victim's credibility.

[3] It is important to note that this case does not involve the question of whether or under what circumstances such a claim of access could overcome the assertion by the witness of what we have characterized as "a broad psychiatrist-patient privilege" under General Statutes §§ 52-146c through 52-146i. *State* v. *Toste,* 178 Conn. 626, 629, 424 A.2d 293 (1979); *State* v. *White,* 169 Conn. 223, 234, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). The trial record indicates no opportunity given to the witness or her guardian to assert her privilege. When the trial court received the records and ordered them sealed subject to its in camera inspection, it noted that they were confidential but that that confidentiality must give way to the defendant's right to a fair trial. It would have been preferable to identify those records which are privileged under the statute, since it is only communications and records thereof involving a psychiatrist or licensed psychologist as opposed to other mental health professionals, which are privileged; see General Statutes §§ 52-146c through 52-146i; and to inform the witness and permit her, through her guardian or attorney, to decide whether and to what extent to assert the privilege. See, e.g., *State* v. *Piskorski,* 177 Conn. 677, 730, 419 A.2d 866, cert. denied,

In *State* v. *Piskorski,* 177 Conn. 677, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979), in which the defendant was afforded access to the witness' psychiatric records, we noted that in view of that access and the unrestricted cross-examination of the witness "it cannot be said that the defendant was . . . deprived of his [right] to . . . confront the witness or denied due process of law. See *Davis* v. *Alaska,* 415 U.S. 308, 94 S. Ct. 1105, 39 L. Ed. 2d 347 [1974]; cf. *State* v. *Corley,* 177 Conn. 243, 246, 413 A.2d 826 [1979]." Id., 738. The defendant's claim here requires us to decide whether, under the circumstances of this case, denial of access to similar records deprived this defendant of his right of confrontation.

We adhere to the principle that the opportunity for cross-examination is central to the constitutional right of confrontation and that the constitutional standard is met when defense counsel is enabled to bring before the jury facts bearing on a witness' reliability. *State* v. *Oullette,* 190 Conn. 84, 101, 459 A.2d 1005 (1983). This principle must, moreover, shape the determination of whether the defendant gains access to material such as is involved here.

---

444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979). Because the assertion of the privilege was not developed at the trial level, because some of the materials here are and some are not privileged, and because the scope of the privilege and its compatability with the right of confrontation was neither briefed nor argued in this case, we do not decide under what circumstances, if any, the assertion of that privilege may be overridden. See, e.g., *Trammel* v. *United States,* 445 U.S. 40, 50–51, 100 S. Ct. 906, 63 L. Ed. 2d 186 (1980); *U.S.* v. *Nixon,* 418 U.S. 683, 707–13, 94 S. Ct. 3090, 41 L. Ed. 2d 1039 (1974); *United States ex rel. Blackwell* v. *Franzen,* 688 F.2d 496, 499–502 (7th Cir. 1982), cert. denied, 460 U.S. 1072, 103 S. Ct. 1529, 75 L. Ed. 2d 950 (1983). We thus decide the right of confrontation issue in this case in the absence of a properly asserted claim of privilege cloaking the withheld material.

This does not mean, however, that any such records must be disclosed to the defendant simply because they relate to a key state's witness whose claimed lack of credibility is the foundation of the defense. Like a witness' personnel files, "[t]here are strong policy reasons for maintaining the confidentiality of . . . files of the type involved in this case." *State* v. *Januszewski,* 182 Conn. 142, 171, 438 A.2d 679 (1980). Such records often will contain sensitive and private material from and about other members of the witness' family, and sensitive and private information about the witness' emotional life, all of which may have no bearing on the witness' ability to recall and relate the truth. Furthermore, society has an interest, which this state has elevated to the status of a privilege in the case of a patient and psychiatrist or psychologist and which a general rule of confidentiality will further, in encouraging people to seek counseling in times of emotional distress and encouraging those people "to make full disclosure to a physician [or other mental health professional] in order to obtain effective treatment free from the embarrassment and invasion of privacy which could result from [access to] a doctor's [or other mental health professional's records]." *State* v. *White,* 169 Conn. 223, 234–35, 363 A.2d 143, cert. denied, 423 U.S. 1025, 96 S. Ct. 469, 46 L. Ed. 2d 399 (1975). These reasons for confidentiality must in each case be weighed against the defendant's right to bring to the jury's attention facts affecting the witness' credibility. Cf. *Davis* v. *Alaska,* supra, (confidentiality of state's witness' juvenile record must yield to defendant's right to cross-examine for bias). Therefore, as occurred in this case, "an in camera inspection by the trial judge of the witness' [records] for material relevant to the issue of credibility" is appropriate. *State* v. *Januszewski,* supra, 173–74.

The linchpin of the determination of the defendant's access to the records is whether they sufficiently disclose material "especially probative of the ability to 'comprehend, know and correctly relate the truth' "; *United States* v. *Lindstrom,* 698 F.2d 1154, 1165–66 (11th Cir. 1983); so as to justify breach of their confidentiality and disclosing them to the defendant in order to protect his right of confrontation. As in the case of admissibility of such records, access to records bearing on "the mental unsoundness of a witness (i.e., relating to a trait importing in itself a defective power of observation, recollection or communication), at or around the time of trial or of the occurrence about which he is to testify"; *State* v. *Piskorski,* supra, 736; should be granted to the defendant. And as in the case of admissibility of such records, however, access to "such [records] must be left to the discretion of the trial court which is better able to assess the probative value of such evidence as it relates to the particular case before it"; id., 737; and to weigh that value against the interest in confidentiality of the records. Whether and to what extent access to the records should be granted to protect the defendant's right of confrontation must be determined on a case by case basis.

With this standard in mind we have examined the voluminous records involved here. We conclude that the trial court did not err in refusing the defendant access to them. There is nothing in them to suggest that the victim was subject to such traits as hallucinations, delusions, lack of contact with or misperception of reality, paranoia or inability to tell the truth.[4] They

---

[4] We do not, by this listing, mean to restrict the traits for which the trial court should look in determining whether to grant access. This list is merely illustrative of the traits which are indications of "mental unsoundness"; *State* v. *Piskorski,* 177 Conn. 677, 736, 419 A.2d 866, cert. denied, 444 U.S. 935, 100 S. Ct. 283, 62 L. Ed. 2d 194 (1979); bearing on credibility.

do not sufficiently disclose material especially probative of the victim's ability to know and correctly relate the truth so as to justify breaching their confidentiality in disclosing them to the defendant. Furthermore, on cross-examination of the victim and in the defendant's case the jury was informed that she had been committed to and treated at the Institute of Living, had spoken with personnel and doctors at Clifford Beers and ACUTE, and had visited a drug rehabilitation center. Thus, the fact of treatment was disclosed to the jury; and the defendant does not complain of any restriction on the extent to which he actually cross-examined the victim. Denial of access to the records, therefore, did not deprive the defendant of his right of confrontation.

*United States* v. *Lindstrom,* supra, on which the defendant relies heavily, is distinguishable.[5] There the trial court's denial of access to psychiatric records of the government's key witness was held to be a denial of the defendant's right of confrontation. The records disclosed that the witness had an hysterical personality; chronically misinterpreted the words and actions of others, particularly lawyers and doctors, who were the defendants in the case and about whose conduct and motives the witness testified; and was diagnosed as having pseudo-neurotic schizophrenia with marked paranoid trends. Unlike the records here, the records there suggested "that the key witness was suffering from an ongoing mental illness which caused her to misperceive and misinterpret the words and actions of others and which might seriously affect her ability 'to know, comprehend and relate the truth' "; id., 1166; and the court held that denial of access to the records

---

[5] We note that the records in *United States* v. *Lindstrom,* 698 F.2d 1154 (11th Cir. 1983), were not privileged under either federal or state law. Id., 1167n. See footnote 3, supra.

prevented full inquiry into whether the witness' testimony was based on fact or psychotic hallucination, whether the witness was schizophrenic, and whether she was able to distinguish reality from hallucination. Id., 1168. The records here are not comparable.

The defendant also argues that denial of access to the records violated his due process right to exculpatory material under *Brady* v. *Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). He claims that the court, because of its unfamiliarity with the theory of defense, cannot make an in camera determination of whether something is exculpatory, and that any inconsistency with the victim's trial testimony contained in the records is exculpatory. We disagree.

*Brady* v. *Maryland,* supra, and *United States* v. *Agurs,* 427 U.S. 97, 96 S. Ct. 2392, 49 L. Ed. 2d 342 (1976), involve the duty of the prosecution to disclose exculpatory evidence to the defendant. *Agurs* specifically approves the procedure of the trial judge making an in camera determination. See *United States* v. *Agurs,* supra, 106. Although " '[t]he heart of the holding in the *Brady* case is the prosecution's suppression of evidence' "; *State* v. *Bember,* 183 Conn. 394, 404, 439 A.2d 387 (1981); and although here the state had no access to the records and thus could not have suppressed them, we must assume that if the trial court discovers, in the course of an in camera inspection, evidence which is exculpatory and material in the *Brady* and *Agurs* senses, it would have a similar duty of disclosure to the defense.

Neither *Brady* nor *Agurs* teaches, however, that every inconsistency is material. Not only must the suppressed evidence be favorable to the accused, it must be material in the constitutional sense. *State* v. *Bember,* supra. The test of materiality is whether the

omitted evidence, evaluated in the context of the entire record, creates a reasonable doubt that did not otherwise exist. Id., 405.

It is true that "[w]hen a conviction depends entirely upon the testimony of certain witnesses . . . information affecting their credibility is material in the constitutional sense since if they are not believed a reasonable doubt of guilt would be created." *State* v. *Grasso,* 172 Conn. 298, 302, 374 A.2d 239 (1977). Here it can hardly be said that the convictions depend entirely on the victim's testimony. The state introduced evidence seized from the defendant's apartment pursuant to a search warrant. When the police arrived with the warrant the defendant told them he knew what they were there for, led them to a bureau and opened a drawer. In the drawer were numerous photographs of the victim, many in the nude and some clothed, in sexually suggestive poses, and three packets of birth control pills. Some of the photographs were of the victim and the defendant, both nude, in various sexual poses, including one of them engaged in cunnilingus. The victim had testified that she obtained a three month supply of birth control pills from a clinic, for which the defendant paid and which she left in a bureau drawer at his apartment. Independent evidence corroborated that she had obtained a three month supply of birth control pills from the clinic. All of this evidence was strongly corroborative of the victim's testimony. Furthermore, our review of the records involved and of the entire trial transcript does not convince us that the records would have created a reasonable doubt of the defendant's guilt. *State* v. *Grasso,* supra.

The defendant also claims, citing *Powell* v. *Alabama,* 287 U.S. 45, 53 S. Ct. 55, 77 L. Ed. 158 (1932), and *Chambers* v. *Mississippi,* 410 U.S. 284, 98 S. Ct. 1038, 35 L. Ed. 2d 297 (1973), that lack of access to the

records denied him his due process right to acquire and present evidence critical to his defense. Our review of the records and of the entire trial transcript convinces us that this claim is without merit. In light of our discussion of *Brady* and *Agurs* we are not persuaded that the principles of *Powell* and *Chambers,* as applied to this case, demonstrate that the due process rights of the defendant were violated.

## II

The defendant argues that the court erred in defining cunnilingus in its charge of the offense of sexual assault in the second degree.[6] We disagree.

In its initial charge the court defined cunnilingus as "[t]he placing of a person's mouth on the vagina of another." After a recess the court expanded on this definition by adding to it a dictionary definition of cunnilingus.[7] The defendant took exception and requested the court to instruct the jury to disregard the first definition and use only the second. The court declined to do so.

" 'Cunnilingus is sexual stimulation of the clitoris or vulva by the lips or tongue. The vulva consists of the external parts of the sex organs.' " *State* v. *Kish,* 186

---

[6] General Statutes § 53a-71 (a) (1) reads in pertinent part: "A person is guilty of sexual assault in the second degree when such person engages in sexual intercourse with another person and such other person is under fifteen years of age . . . ."

General Statutes § 53a-65 defines sexual intercourse to include "cunnilingus between persons regardless of sex."

[7] The court charged as follows: "I said to you the placing of a person's mouth on the vagina of another constitutes cunnilingus. I have been asked to give you a further explanation of that. I have from Webster's Third New International Dictionary of the English Language Unabridged, the definition of cunnilingus: One who licks the vulva. Lingus from the word lingere to lick, cunnilingus v. cunnilinctus. Act of licking, from linctus, past participle of lingere, to lick stimulation of the vulva or clitoris with the lips or tongue. And, that's my definition of that."

Conn. 757, 764, 443 A.2d 1274 (1982). While the court's charge did not meticulously track this definition of cunnilingus[8] and while it would have been preferable to give the definition approved in *State* v. *Kish,* supra, the charge as given comes within the familiar principle that "[j]ury instructions need 'not be exhaustive, perfect or technically accurate,' so long as they are 'correct in law, adapted to the issues and sufficient for the guidance of the jury.' *Castaldo* v. *D'Eramo,* 140 Conn. 88, 94, 98 A.2d 664 (1953); see *Messina* v. *Iannucci,* 174 Conn. 275, 278, 386 A.2d 241 (1978); *State* v. *Sawicki,* 173 Conn. 389, 396, 377 A.2d 1103 (1977); Maltbie, Conn. App. Proc. § 76. This court considers a charge in its entirety." *State* v. *Mason,* 186 Conn. 574, 585, 442 A.2d 1335 (1982). Considered in its entirety this charge passes muster.

## III

The defendant's final claim is that the court's instructions on the charges of sexual assault in the second degree and risk of injury to a minor usurped the jury's function and had the effect of directing a verdict against the defendant on both these charges.[9]

---

[8] We note that the court's charge was given on March 25, 1982, and *State* v. *Kish,* 186 Conn. 757, 443 A.2d 1274 (1982), was decided on April 27, 1982.

[9] In its instructions on sexual assault in the second degree the court charged as follows: "The statute that I just read to you consists of two elements. In order for you to find the defendant guilty of sexual assault in the second degree, the State must prove each of the two elements beyond a reasonable doubt. The elements are, one, that there was an act of sexual intercourse; and, two, that one of the persons involved in the act was at the time under the age of fifteen years.

"You will note that the statute says nothing concerning force. You will note that the statute says nothing concerning the knowledge or lack of knowledge of the defendant regarding the age of the person under the age of fifteen, nor does it say anything about the physical development or the prior activities of the person under fifteen years of age.

"This particular statute is made to protect people of those tender years. Your inquiry is whether the State has proven: one, whether the defendant

The trial court may comment on the weight of the evidence so long as it does not direct or advise the jury how to decide the matter. *State* v. *Mullings,* 166 Conn.

engaged in an act of sexual intercourse; and, two, whether the person with whom the act or acts were performed was then and there under the age of fifteen years.

"If you find that the State has proved beyond a reasonable doubt that the answers to these inquiries are both in the affirmative, you must bring in a verdict of guilty to the charge of sexual assault in the second degree.

"If you find that the State has not proved beyond a reasonable doubt, one, that there was an act of sexual intercourse or the State fails to prove beyond a reasonable doubt that the act took place with one under the age of fifteen, then you must return a verdict of not guilty of the charge of sexual assault in the second degree.

"You will recall that [the victim] testified that Joseph Storlazzi put his mouth on her vagina. You have seen a photo which was placed in evidence and described as depicting an act of sexual intercourse involving Joseph Storlazzi. You have heard testimony as to the age of [the victim]. It is from this evidence and the testimony, as you weigh it and probe it, that you must make the determination as to whether or not the State has proven the guilt of the defendant beyond a reasonable doubt.

"There has been some testimony as to the sexual desires of [the victim], and as to what reasons may have been involved in such activity.

"I charge you that the desires of [the victim] and any reason for such activity are not proper considerations for you. Reduced to the simplest terms, your inquiry is: Has any act of sexual intercourse involving the defendant and [the victim] occurred on that day in September of 1977 and also, what the age was of [the victim] at that time."

In its charge on risk of injury to a minor the court charged as follows: "As I indicated to you, it's the second portion of the statute with which we are concerned. The statute in its second aspect provides for the punishment of any person who 'does any act likely to impair the health or morals of any child.' You will apply to this provision the explanation of the word which I have given you, under the aspect of the statute.

"And, your inquiry will be: Whether the accused did any act which was likely to impair the health or morals of the child.

"So, in dealing with this statute, if you find that the accused wilfully or unlawfully caused or permitted the child involved to be placed in a position where its morals are likely to be impaired, there would be a violation.

"The placing is taken care of by a specific act. It is the act committed which would be likely to impair the health or morals of the child which constitutes the violation.

"This second portion of the statute does not require a specific intent. It is the act itself which determines whether or not there has been a violation.

"You have heard testimony concerning the defendant taking [the victim]

268, 274, 348 A.2d 645 (1974). The ultimate test of the charge is whether, read in its entirety, it fairly presents the case to the jury so that no injustice is done. Id.

The court fairly and adequately told the jury that they, not the court, decide the facts; that its comments on the evidence were merely suggestions for them to approve or disapprove; that its concern with the facts was only to refer to them to make clear the application of the relevant rules of law; that its reference to any evidence was not meant to emphasize that evidence or limit their consideration to it; that if it incorrectly recalled any evidence they should follow their own

to his house. You have heard testimony of his kissing her, undressing her, and having sexual intercourse with her.

"You further heard testimony from [the victim] that the defendant stated that he caused [another female] to come to his house for the purpose of furnishing sexual favors to persons for sums of money. You heard that the defendant asked [the victim] if she wished to engage in this type of conduct.

"You also heard testimony regarding the insertion of a certain vibrator in the vagina of [the victim]. You have heard that the defendant did provide customers for a period from September of 1977 to June of 1978, for [the victim]; that he was instrumental in having pictures of [the victim] taken while she was nude. You heard that [the victim] at the time all this took place was under the age of sixteen.

"This is the type of activity that Connecticut General Statutes [§] 53-21 seeks to protect children from. And, that is the type of activity which is likely, if it did take place, to impair the health and morals of a child.

"If you find that such acts or activity took place and if you find that the defendant, Joseph Storlazzi, did at the time and place described, do any such acts or caused or permitted [the victim] to be placed in a situation where such acts were to occur; and if you also find that at such time [the victim] was under the age of sixteen; and if you find that the State has proven such beyond a reasonable doubt, then you must find the defendant guilty of injury or risk of injury to, or impairing the morals of a child, in violation of Section 53-21 of the Connecticut General Statutes.

"If you find that there is a reasonable doubt, that such activity or such acts took place or that [the victim] was under the age of sixteen at the time in question, then you must find the defendant not guilty."

recollection; and that if it referred to the evidence of the state or accused more than the other it was not meant to convey how it felt about the case since it had no preference or inclination one way or the other. The charge was a quite proper and balanced exercise of the judicial function of instructing the jury on the respective functions of court and jury. It was well within that function for the court to instruct the jury, after reviewing the evidence of the defendant's conduct, that "[t]his is the type of activity that Connecticut General Statutes [§] 53-21 seeks to protect children from. And, that is the type of activity which is likely, if it did take place, to impair the health and morals of a child." We see nothing in this charge which even approaches the kind of impropriety claimed by the defendant. The instructions, read in their entirety, did not direct or advise the jury how to decide the matter, and fairly presented the case to the jury in such a way that no injustice was done to the defendant. Indeed, the instructions comported with the requirement that an allusion to the evidence is necessary to furnish the jury with a practical guide as to how to apply the law to the evidence. *Shea* v. *Tousignant,* 172 Conn. 54, 60, 372 A.2d 151 (1976).

There is no error.

In this opinion the other judges concurred.