# STATE OF CONNECTICUT *v.* MICHAEL D'AMBROSIO
## (5170)

BORDEN, DALY and O'CONNELL, Js.

Argued October 8, 1987—decision released May 3, 1988

*Susan M. Hankins,* assistant public defender, for the appellant (defendant).

*James A. Killen,* deputy assistant state's attorney, with whom, on the brief, were *Patrick J. Clifford* and *James G. Clark,* assistant state's attorneys, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction, after a jury trial, of burglary in the third degree in violation of General Statutes § 53a-103 (a), conspiracy to commit burglary in the third degree in violation of General Statutes §§ 53a-103 (a) and 53a-48 (a), criminal attempt to commit assault in the first degree in violation of General Statutes §§ 53a-49 (a) and 53a-59 (a) (1), and larceny in the sixth degree in violation of General Statutes § 53a-125b.

The defendant claims that the trial court erred (1) in failing to suppress evidence seized pursuant to an automobile search, (2) in denying the defendant access to the psychiatric records of a state's witness, (3) in admitting opinion evidence to hypothetical questions, and (4) in determining there was sufficient evidence to convict the defendant of criminal attempt to commit assault in the first degree.

The jury could reasonably have found the following facts. On October 29, 1985, the complainant, a seventy-nine year old woman, returned to her house on Leetes Island Road in Guilford and discovered that the rear

door to the house had been smashed. Officer Michael Dennison of the Guilford police department investigated the break-in. One of the complainant's neighbors informed Dennison that she had observed a heavy set white male in dark clothing run down the driveway and enter a dark, older model American car with a white top. The neighbor stated that she also observed the passenger of the car, who was a heavy set white male with messy, dirty blonde hair and an unkempt beard, and who also wore dark clothing. The complainant mentioned to the officer that she had been involved in a motor vehicle accident the previous day.

Approximately forty-five minutes later, an officer observed a car being driven by the defendant and carrying a passenger, a defendant in a related action, Albert Knous, which matched the neighbor's description. The officer then processed the license plate number through the state department of motor vehicles and determined that the license plate was not registered to be on that particular car.

Another officer, Steven Spurrell, approached the vehicle which he found parked in front of the town hall and asked the defendant for his license and registration. The defendant was unable to produce either document, but indicated that the car belonged to Jonathan Schofield, a friend of his, who was working that day. At this time, another officer had arrived at the scene and both the defendant and Knous were searched for weapons. The defendant and Knous denied any knowledge of the reported burglary. Spurrell testified that he had known both the defendant and Knous as "regular customers" with the Guilford police department. On the basis of his knowledge of the two men's previous involvement with the police, including an arrest for carrying a weapon in a motor vehicle, Spurrell checked the vehicle for weapons. A hunting knife with a seven

inch blade was found under the driver's seat. Both men were arrested for carrying a weapon in a motor vehicle.

The following day, October 30, 1985, John Schofield, the owner of the seized vehicle, indicated to the police that he had allowed the defendant permission to use his car. Schofield consented to a search of his car. The police seized a metal box from the trunk of the car and from the interior of the car, they seized a motor vehicle accident report concerning the accident the previous day involving the complainant.

At trial, Knous testified for the state and acknowledged that the defendant had approached him while he was picking apples on Long Hill Road. Knous testified that the defendant told him that he had broken into a garage at 98 Leetes Island Road and cut the brake lines to the car in the garage and stole a metal tool box from the garage. At that time, the defendant informed Knous of a television set that he observed at the premises and asked Knous if he wanted to join him, steal the television and divide the proceeds of its sale. The pair proceeded to 98 Leetes Island Road where Knous entered through the rear door which he claimed was previously smashed. Upon hearing a car coming up the driveway, Knous departed without taking anything.

Additionally, the state produced expert testimony which indicated that the brake line tubing of the complainant's car was cut by means of a knife-type instrument. Neither expert could, however, determine whether the knife which had been seized by the police was the cutting instrument used. Both experts testified that the complainant would not have been able to stop her vehicle upon descending her steep driveway which led to an intersection. Moreover, the experts testified as to what would happen when a driver applied his brakes, after the brake lines of a car had been cut.

## I

In his first claim of error, the defendant claims that the trial court erred in refusing to suppress the evidence obtained from Schofield's car. Specifically, the defendant claims error in the seizure of the knife discovered underneath the seat and the seizure of the metal tool box recovered from the trunk. We find no merit in the defendant's argument.

## A

The court did not err by allowing the knife seized from the car into evidence. The defendant maintains that a *Terry* stop was not justified in this case because the descriptions of the car and of the passenger were too general in nature. *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). In support of this argument, the defendant cites *United States* v. *Cortez,* 449 U.S. 411, 417–18, 101 S. Ct. 690, 66 L. Ed. 2d 261 (1981), which states that, in order to have a *Terry* stop withstand challenge, the "detaining officers must have a particularized and objective basis for suspecting the particular person[s] stopped of criminal activity." The defendant argues that there was no such particularized description, such as the marker plate, the make of the car, the age of the passenger, his height, facial features, or clothing, that would supply a distinctive description to justify a *Terry* stop.

"[A] police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." *Terry* v. *Ohio,* supra, 22. The United States Supreme Court has recognized that "it may be the essence of good police work to adopt an intermediate response." *Adams* v. *Williams,* 407 U.S. 143, 145, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972). Although the

defendant asserts that the police need a specific and particular description, our Supreme Court has stated that "[w]hat constitutes a reasonable and articulable suspicion depends on the totality of the circumstances." *State* v. *Aillon,* 202 Conn. 385, 399, 521 A.2d 555 (1987).

In the present case, Spurrell was justified in detaining the defendant and Knous to investigate both the misuse of the license plate and the burglary. See *State* v. *Perez,* 181 Conn. 299, 304, 435 A.2d 334 (1980). The car was stopped within two and one-half miles of the situs of the crime and within an hour of the time when the dispatcher had received the initial complaint. " 'Proximity in time and place of the stop to the crime is highly significant' in the determination of whether an investigatory detention is justified by reasonable and articulable suspicion." (Citations omitted.) *State* v. *Aillon,* supra, 400, quoting *State* v. *Aversa,* 197 Conn. 685, 691, 501 A.2d 370 (1985). Additionally, the similarities between the neighbor's description of the culprits and their car, with the actual appearance of the car and Knous was sufficient to warrant Spurrell in making an investigatory stop. See *State* v. *Mitchell,* 7 Conn. App. 46, 507 A.2d 1017, cert. granted, 200 Conn. 805, 512 A.2d 230 (1986). Furthermore, the officer would have been justified in making a stop of the vehicle for an apparent violation of improper use of registration. General Statutes § 14-147 (c); *State* v. *Mitchell,* supra, 60. Under the totality of circumstances, we cannot say that the police action was inappropriate or unreasonable under the fourth amendment.

Since the officer was justified in making the stop, he was justified in "patting down" the defendant and conducting a protective search of the passenger compartment of the car. *Michigan* v. *Long,* 463 U.S. 1032, 103 S. Ct. 3469, 77 L. Ed. 2d 1201 (1983); *Terry* v. *Ohio,* supra, 21. Moreover, Spurrell's first hand knowledge

of the criminal history of both the defendant and Knous justified the protective search. *Michigan* v. *Long,* supra, 1049–50.

## B

The defendant claims that the trial court erred in admitting the gray metal tool box found in the trunk of the car pursuant to Schofield's consent to search the car the following day. Schofield reclaimed the car from the police station the day after it was impounded because he needed it for work. The defendant claims that Schofield's consent was involuntary and invalid. Because we find that the defendant is not entitled to challenge the search, we do not consider these issues.

In order for a defendant to challenge a search of an automobile, he must establish that he had a reasonable expectation of privacy in the area searched. *State* v. *Manson,* 13 Conn. App. 220, 535 A.2d 829 (1988). In this case, while there may be evidence that the defendant had an expectation of privacy on October 29, during the period of time he used the car; see, e.g., *United States* v. *Rose,* 731 F.2d 1337 (8th Cir. 1984) (permissive use of automobile may provide basis for assertion of fourth amendment claims); the defendant established no facts alleging that the expectation of privacy continued to the following day when the car was reclaimed by its owner. Thus, the court did not err in admitting the tool box into evidence.

## II

The defendant's second claim of error is that the court improperly denied the defendant's request for an examination of Knous' psychiatric records. Prior to cross-examination, counsel for the defense questioned Knous outside the presence of the jury concerning his treatment for alcoholism at Connecticut Valley Hospital. Knous stated that he had been admitted to a

twenty-eight day alcohol program and that he had been drinking on the day of the burglary.[1] The defendant argues that the trial court's ruling denying access to Knous's psychiatric records precluded him from cross-examining the state's key witness on facts highly probative of credibility, capacity to perceive and ability to recall facts, thereby impairing his right of confrontation.

The defendant cites *State* v. *Storlazzi,* 191 Conn. 453, 462, 464 A.2d 829 (1983), in support of his claim of error. In *Storlazzi,* the court reaffirmed its holding in *State* v. *Grasso,* 172 Conn. 298, 302, 374 A.2d 239 (1977), stating "that 'when a conviction depends entirely upon the testimony of certain witnesses . . . information affecting their credibility is material in the constitutional sense since if they are not believed a reasonable doubt of guilt would be created.' " *State* v. *Storlazzi,* supra. It is clear that the state relied heavily on Knous' testimony.

The United States Supreme Court has recently held that the right to confrontation is the right to cross-examine and not the right of an all-inclusive cross-examination. In *Pennsylvania* v. *Ritchie,* 480 U.S. 39, 52–53, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987), the Supreme Court held: "[T]he right of confrontation is a *trial* right, designed to prevent improper restrictions on the types of questions that defense counsel may ask during cross-examination . . . . The ability to question adverse witnesses, however, does not include the power to require the pretrial disclosure of any and all information that might be useful in contradicting unfavorable testimony. Normally the right to confront one's accusers is satisfied if defense counsel receives wide latitude at trial

---

[1] When Knous was questioned by defense counsel about whether he had been "drinking to excess," Knous replied, "I had been drinking. Excessive, I don't know."

to question witnesses. *Delaware* v. *Fensterer,* supra, 21–22. In short, the Confrontation Clause only guarantees 'an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish.' " (Emphasis in original.)

In the present case, the defendant was provided wide latitude at trial to question Knous. The trial court stated that the questioning of Knous concerning his treatment for alcoholism "might very well have something to do with the credibility of his testimony and certainly [the defendant is] at liberty to take that up in front of the jury."

Furthermore, in *State* v. *Burak,* 201 Conn. 517, 523, 518 A.2d 639 (1986), our Supreme Court held that when the claimed impeaching material is privileged, the party must make an offer of proof that failure to produce the material would impair his confrontational rights. See also *State* v. *Esposito,* 192 Conn. 166, 179–80, 471 A.2d 949 (1984). The defendant is required to make "a plausible showing that [these psychiatric records] would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *United States* v. *Valenzuela-Bernal,* 458 U.S. 858, 873, 102 S. Ct. 3440, 73 L. Ed. 2d 1193 (1982). We have reviewed the record and agree with the trial court that the defendant failed to make the necessary preliminary showing that the failure to produce the psychiatric records was likely to impair his confrontational rights.

## III

The defendant's third claim of error is that the trial court erred in allowing two of the state's witnesses to answer hypothetical questions.[2] Specifically, the

---

[2] The state asked the first expert the following questions:

"Q. And based on your knowledge of automobiles and your experience,

defendant argues that the state failed to demonstrate that either witness had any specialized skill or knowledge to offer an opinion beyond the ability of the average juror, as to what would occur if the car with the broken brake line had been driven.

As a preliminary matter we note that the trial court has wide discretion in ruling on the "qualification of expert witnesses and the admissibility of their opin-

do you have an opinion as to whether you were, if you were coming down that driveway without using any brakes and when you got to the bottom for the first time and you attempted to apply brakes, when the front line was cut, do you have an opinion as to whether that car would stop at all at the bottom of the driveway?

"A. I think that if you were not anticipating any problem, having any problem, and you just drove normally down the driveway and came to the end and put the brakes on, you would just—you wouldn't stop in time, you would go right across. It goes right on to the road and comes right onto the right at a right angle, and I think that in that situation it would just go right across the road.

"Q. If you were just driving down a street at forty miles per hour and came to a stop sign and went to hit the brakes, first of all, would the front lines cut as it was, what would happen with that pedal when you put your foot on it, the brake pedal?

"A. Okay ? . I said, again it would just slide. The back wheels would just slide. You would catch a little bit at the bottom, the brake pedal, and that would be the back brakes actuating and the weight would come forward on the car and there would not be enough traction on the back wheels to stop the car. It would stop eventually, but it would take a much longer time to do it."

The state's second expert witness was asked the following:

"Q. I would ask you once again and specifically your knowledge of the physical stature of Winford Andrews if she was driving down the street at between thirty to forty miles per hour without knowing that she had any difficulty in the front brakes and came to an intersection, what would happen when she put her foot on the brake pedal?

"A. I doubt very seriously that it would stop in an intersection. She would panic first.

"Q. Why would that be?

"A. Because there would be that lag in the braking system where there would be no pressure at all until she got at least half way down to the floor. So, therefore, what I have done myself is I have taken my foot off the brake and hit it again. By that time she is through the intersection the dog is dead or whatever."

ions." *State* v. *Kemp,* 199 Conn. 473, 476, 507 A.2d 1387 (1986). Moreover, it is rare for a reviewing court to find that a trial court has erred in permitting such testimony. *State* v. *Palmer,* 196 Conn. 157, 168, 491 A.2d 1075 (1985); B. Holden and J. Daly, Connecticut Evidence § 118 (a). The trial court's decision that a witness qualifies as an expert and that the testimony is admissible "is 'not to be disturbed . . . "unless [its] decision has been abused or the error is clear and involves a misconception of the law." ' " *Going* v. *Pagani,* 172 Conn. 29, 35, 372 A.2d 516 (1976); *State* v. *Biller,* 190 Conn. 594, 617, 462 A.2d 987 (1983).

" 'Generally, expert testimony is admissible if (1) the witness has a special skill or knowledge directly applicable to the matter in issue; (2) that skill or knowledge is not common to the average person; and (3) the testimony would be helpful to the court or jury in considering the issues.' *State* v. *Kemp,* [supra, 476]." *State* v. *Vilalastra,* 9 Conn. App. 667, 679, 521 A.2d 170 (1987).

One witness worked as a welder in an automobile manufacturing plant who did his own car mechanic work and was familiar with braking systems. This witness was, moreover, the party responsible for repairing the broken brake line on the complainant's car. The second witness was a car mechanic with nineteen years experience in braking systems. The trial court did not err in deciding that these two witnesses were qualified as experts. The two witnesses enjoyed a special skill and knowledge "beyond the ken of the average juror, that, properly applied, would be helpful to the determination of the ultimate issue." *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277 (1973).

Additionally, the defendant objected to a question to the expert brake witness as having no basis in the evidence. The question: "If you were just driving down a street at forty miles per hour and came to a stop sign

and went to hit the brakes, first of all, what would happen with that pedal when you put your foot on it, the brake pedal?''

"The admissibility of a hypothetical question calls for the exercise of sound discretion as to whether the question, even though it does not contain all of the facts in evidence, presents the facts in such a manner that they bear a true and fair relationship to each other and to the whole evidence in this case, whether it is not so worded as to be likely to mislead or confuse the jury and, further, whether it is not so lacking as to be without value in the decision of the case. *Healy* v. *White,* 173 Conn. 438, 446–47, 378 A.2d 540 (1977)." *State* v. *Hardwick,* 1 Conn. App. 609, 617, 475 A.2d 315 (1987).

As in *Hardwick,* the question did not ask the experts to reach a conclusion based on misleading representation of facts. It merely asked them to project the result of a possible situation. We thus conclude that the trial court did not abuse its discretion in allowing the question and its answer.

## IV

The defendant's final claim is that there was insufficient evidence produced at trial from which the jury could have found the defendant guilty of criminal attempt to commit assault in the first degree in violation of General Statutes § 53a-59.[3] The defendant argues that the element of specific intent to cause serious physical injury had not been proven.

An examination of the sufficiency of the evidence requires this court to make a bifurcated analysis. *State*

---

[3] Section 53a-59 provides in relevant part: "ASSAULT IN THE FIRST DEGREE: CLASS B FELONY. (a) A person is guilty of assault in the first degree when: (1) With intent to cause serious physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument . . . . "

v. *Baskins,* 12 Conn. App. 313, 316, 530 A.2d 633 (1987). First, we review the record and construe it in a light most favorable to sustaining the verdict. *State* v. *Cimino,* 194 Conn. 210, 211, 478 A.2d 1005 (1984); *State* v. *Waterman,* 7 Conn. App. 326, 338, 509 A.2d 518 (1986). Second, we determine whether, " 'the jury could have reasonably concluded, upon the facts established, guilt beyond a reasonble doubt.' " *State* v. *Braxton,* 196 Conn. 685, 691, 495 A.2d 273, quoting *State* v. *Cimino,* supra, 211. In the present case, the review is of the specific intent of the defendant. Our Supreme Court has stated: "Intent is a mental process, and absent an outright declaration of intent, must be proved through inferences drawn from the actions of an individual, i.e., by circumstantial evidence." *State* v. *Crump,* 201 Conn. 489, 495, 518 A.2d 378 (1986). Furthermore, "any inference drawn must be rational and founded upon the evidence." *State* v. *Williams,* 202 Conn. 349, 355, 521 A.2d 150 (1987); see also B. Holden & J. Daly, Connecticut Evidence § 66 (c).

Construing, as we must, the evidence in the light most favorable to sustaining the verdict, the jury could have readily found the following facts: (1) the defendant was full of rage over the fact that, as a result of his accident with the complainant, his car was totalled and he could not get compensated by his insurance company; (2) the defendant had broken into the house and garage; (3) during the break-in, the defendant maliciously severed the brake lines with a hunting knife that he had brought with him for the sole purpose of doing such; (4) a car with its brake lines severed would not be able to stop when approaching oncoming traffic; (5) the steep decline of the driveway would cause the car to obtain some speed before entering the busy intersection below; and (6) the complainant due to her age and frailness, would incur serious bodily injury. Such

a review of the evidence leaves us to conclude that the conviction must stand.

There is no error.

In this opinion the other judges concurred.