636 A.2d 69

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT, v.
RONALD VALENTINE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted November 9, 1992—Decided March 18, 1993.

Keefe, J.A.D., dissented and filed opinion.

Before Judges LONG, D'ANNUNZIO and KEEFE.

*Zulima V. Farber,* Public Defender, attorney for appellant (*Neal M. Frank,* Designated Counsel, of counsel and on the brief).

*Robert J. Del Tufo,* Attorney General, attorney for respondent (*Deborah Bartolomey,* Deputy Attorney General, of counsel and on the letter brief).

The opinion of the court was delivered by

D'ANNUNZIO, J.A.D.

This appeal is from judgments of conviction under Monmouth County Indictments No. 90–08–1321 and No. 90–12–1960. After denial of his suppression motions, defendant pleaded guilty, pursuant to a plea agreement, to count four of No. 90–12–1960, possession of cocaine within 1,000 feet of a school with intent to distribute it (*N.J.S.A.* 2C:35–5a(1); *N.J.S.A.* 2C:35–7), and to count one of No. 90–08–1321, possession of a knife by a person previously convicted of a crime (*N.J.S.A.* 2C:39–7). Defendant was sentenced to an aggregate term of five years imprisonment with two years of parole ineligibility. Defendant's sole contention is that the trial court erred in denying his motions to suppress evidence.

We first address the cocaine charge. Detective Coutu, a law enforcement officer with substantial experience in drug enforcement, testified that on September 20, 1990, he was engaged in surveillance of the intersection of West Bergen and Layton Avenues in Red Bank, New Jersey. According to Coutu the area had been targeted for surveillance because it had been "identified as a high traffic area for narcotics distributors and buyers in that area." With the aid of binoculars, Coutu observed defendant standing on the southwest corner in the company of a female. A pickup truck made a left turn onto Layton Avenue and stopped at the corner where defendant was standing. The driver of the truck rolled down his window and conversed with defendant. After the conversation, defendant walked to the rear of the truck and Coutu "observed him just physically surveilling the area, looking back and forth." Defendant then walked to the front of the truck and entered it.

The vehicle drove south on Layton for fifty feet, made a u-turn and returned to the intersection, where defendant emerged from the vehicle with currency in his hand. Defendant secreted the currency in his left sock. Based on his experience, Coutu concluded that defendant, who was well known to him and other members of the Red Bank police department, had just engaged in a drug transaction.

As a result of Coutu's observations, other officers approached and searched defendant. They found the currency and drugs.

The trial court found that Coutu's observations and experience justified Coutu's conclusion that he had just witnessed a drug transaction and, therefore, that the police had probable cause to search defendant.

■ We are satisfied that Coutu's observations and his training and experience justified his conclusion that defendant had engaged in a drug transaction and, at the very least, that evidence of the transaction, *i.e.*, the currency, was on defendant's person. *See State v. Waltz*, 61 *N.J.* 83, 87, 293 *A.*2d 167 (1972) (probable cause equivalent to a "well grounded suspicion" that a crime has been committed); *State v. Pierce*, 190 *N.J.Super.* 408, 415, 463 *A.*2d 977 (App.Div.1983) (police officer's training and experience may convert a "hunch" into probable cause). In *United States v. Cortez*, 449 *U.S.* 411, 418, 101 *S.Ct.* 690, 695, 66 *L.Ed.*2d 621, 629 (1981), the Supreme Court articulated a description of the process of assessing the existence of probable cause which is particularly applicable in this case:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.

Coutu's observation supported his "common-sense conclusions" as a law enforcement officer that defendant probably had exchanged drugs for currency while he was in the truck.

A warrant was not necessary to search defendant because of the exigency inherent in defendant's mobility.

We affirm the judgment of conviction under Indictment No. 90–12–1960.

The conviction of possession of a knife, however, is based on a stop and frisk of defendant by Officer Nuccio on June 22, 1990. On that date, Officer Nuccio was on patrol alone shortly after

midnight when he observed a woman standing in the middle of the street.[1] Stopping his vehicle, Nuccio observed defendant "duck behind [a] tree." Nuccio emerged from his vehicle and approached defendant who was then "walking from behind the tree, walking out towards me with his hands in his pocket." As Nuccio and defendant closed the distance between them, Nuccio recognized defendant as a person known to him. Nuccio testified:

Q. And did you know of Mr. Valentine's past?

A. Yes I know Mr. Valentine pretty well, I believe.

Q. And you knew him as from your experience as a police officer?

A. Yes, sir.

Q. And what did you know about Mr. Valentine?

A. I had known he has a lengthy arrest sheet. That he had been involved in weapons offenses, armed robberies, prior C.D.S. complaints and stuff like that.

Nuccio asked defendant to remove his hands from his pocket, and defendant complied. Defendant told Nuccio that he was about to urinate when he saw the police vehicle. Nuccio brought defendant to the police car and patted him down just as back-up arrived. Nuccio felt a hard object in defendant's right jacket pocket and removed it. The object was "a locked blade knife that was locked in the open position."

■ The applicable principles of law are not in dispute. Officer Nuccio's stop of defendant for investigative purposes was within constitutional bounds if Nuccio had a reasonable suspicion, grounded in specific and articulable facts, that defendant was then engaged in criminal activity. *See United States v. Hensley,* 469 *U.S.* 221, 229, 105 *S.Ct.* 675, 680, 83 *L.Ed.*2d 604, 612 (1985); *United States v. Cortez, supra,* 449 *U.S.* at 417, 101 *S.Ct.* at 694, 66 *L.Ed.*2d at 628–629 (1981); *Delaware v. Prouse,* 440 *U.S.* 648, 99 *S.Ct.* 1391, 59 *L.Ed.*2d 660 (1979); *Terry v. Ohio,* 392 *U.S.* 1, 24, 88 *S.Ct.* 1868, 1881, 20 *L.Ed.*2d 889, 906 (1968); *State v. Thomas,* 110 *N.J.* 673, 542 *A.*2d 912 (1988). In *Thomas,* our Supreme Court stated:

---

[1] The woman was a friend of defendant's.

This involves something less than the probable cause standard needed to support an arrest. A police officer must be able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" the intrusion. *Id.* [392 *U.S.*] at 21, 88 *S.Ct.* at 1879, 20 *L.Ed.*2d at 906. More recently, in *United States v. Cortez*, 449 *U.S.* 411, 101 *S.Ct.* 690, 66 *L.Ed.*2d 621 (1981), the Court reiterated this requirement, stating that an investigatory stop must be justified by some objective manifestation that the suspect was or is involved in criminal activity. *Id.* at 417, 101 *S.Ct.* at 695, 66 *L.Ed.*2d at 628. The essence of this standard is "that the totality of the circumstances—the whole picture—must be taken into account. Based upon that whole picture the detailing officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Id.* at 417, 101 *S.Ct.* at 695, 66 *L.Ed.*2d at 629; *accord State v. Davis*, 104 *N.J.* 490, 504 [517 *A.*2d 859] (1986) (adopting totality-of-circumstances standard announced in *Cortez* ).

[110 *N.J.* at 678, 542 *A.*2d 912.]

■ We conclude that the investigative stop and questioning of defendant in this case was constitutionally permissible given the hour of the day, defendant's suspicious behavior and Nuccio's knowledge of defendant's criminal history.

■ However, whether there was good cause for a protective search is a separate question. *Id.* at 678, 542 *A.*2d 912.

*Terry* established that to protect himself, an officer may perform a reasonable search for weapons

where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; *the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.*

. . . .

And in determining whether the officer acted reasonably in such circumstances, due weight must be given, *not to his inchoate and unparticularized suspicion or "hunch,"* but to the *specific reasonable inferences* which he is entitled to draw from the facts in light of his experience. [392 *U.S.* at 27, 88 *S.Ct.* at 1883, 20 *L.Ed.*2d at 909 (citations omitted; emphasis supplied).]

The reasonableness of the search, therefore, is to be measured by an *objective* standard. More than an officer's generalized statements and subjective impressions are required. The officer must be able "to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Sibron v. New York*, 392 *U.S.* 40, 64, 88 *S.Ct.* 1889, 1903, 20 *L.Ed.*2d 917, 935 (1968).

[*State v. Thomas, supra,* 110 *N.J.* at 679, 542 *A.*2d 912.]

We are persuaded that the circumstances, measured objectively, did not justify a belief that defendant was armed. Though a relevant factor, Nuccio's knowledge of defendant's criminal history was insufficient, on this record, to convert defendant's furtive movement to an indicator that he was armed and dangerous. *Cf. United States v. Hairston,* 439 *F.Supp.* 515, 518 (N.D.Ill.1977) (defendant's status as a previously convicted person did not justify police seizing of object causing a bulge in defendant's pants); *State v. Giltner,* 56 *Haw.* 374, 537 *P.*2d 14, 17 (1975) (police officer's knowledge that during a previous police encounter defendant had been offensively armed did not justify frisk). *But cf. State v. D'Ambrosia,* 14 *Conn.App.* 309, 541 *A.*2d 880, 883 (1988) (policeman's first hand knowledge of defendant's criminal history justified protective pat down), *rev'd on other grounds,* 212 *Conn.* 50, 561 *A.*2d 422 (1989), *cert. denied,* 493 *U.S.* 1063, 110 *S.Ct.* 880, 107 *L.Ed.*2d 963 (1990).

Defendant complied with Nuccio's request to remove his hands from his pockets. Prior to the pat-down, Nuccio did not observe or detect any bulges or other physical indicia that defendant was carrying a weapon. Defendant also complied with Nuccio's request to move toward the police car, and there is nothing in the record to establish that defendant behaved in a hostile or threatening manner.[2] The only concern Nuccio expressed was that he didn't feel "comfortable." When pressed by the assistant prosecutor as to why he did not feel comfortable, Nuccio testified that it was "just his nervousness, he didn't seem like he was too awful concerned with anything I had to do. Why I was there or anything like that."

---

[2] The dissent relies in part on testimony that Nuccio knew that defendant and Miss Collier lived a block away from the stop. We do not understand how that fact helps the State because it established a legitimate reason, known to Nuccio, for defendant's presence in the neighborhood.

The dissent correctly observes that our Supreme Court has cited *State v. Collins*, 479 *A.2d* 344 (Me.1984) with approval. *State v. Thomas, supra*, 110 *N.J.* at 680, 542 *A.2d* 912. However, the facts in *Collins* justifying the stop and frisk were extreme and involved confrontational behavior by the suspect. We reproduce a description of the encounter.

> From the evidence introduced at trial, the presiding justice would have been warranted in finding the following facts. At approximately 1:15 a.m. on the morning of February 24, 1983, Daniel Young of the Portland Police Department observed the defendant and a companion leaving a business district each carrying a white, opaque plastic bag out of the top of which a business calculator with a tape printout protruded. Officer Young had personal knowledge that the defendant was a convicted thief and burglar and a suspect in other thefts and burglaries. The officer drove his police cruiser to the side of the street and approached the two individuals. At this time he noticed the sides of the bags were bulging with square cornered objects. In response to Officer Young's inquiry as to the contents of the two bags, the defendant responded that they contained clothing. When Officer Young expressed his disbelief and requested the defendant to put down the bag, the defendant became verbally abusive.

[*State v. Collins, supra*, 479 *A.2d* at 345.]

Compared with the facts in *Collins*, Nuccio's experience with defendant was benign. Nuccio did not identify the criminal activity he suspected of defendant and, therefore, this is not a case in which the suspected crime supports an inference that the subject is armed and dangerous. *State v. Thomas, supra*, 110 *N.J.* at 680, 542 *A.2d* 912.

Finally, we should not encourage undue reliance on a police officer's alleged knowledge, at the time of the encounter, of a subject's criminal history lest that knowledge together with perceived suspicious activity or furtive behavior become a rationalization for a pattern of street harassment.

Although we do not disturb the motion judge's factfindings, which we stated above, we differ with his conclusion that those facts justified the pat-down. *See State v. Contursi*, 44 *N.J.* 422, 428, 209 *A.2d* 829 (1965) (where facts are established the determination of probable cause involves only the application of law).

We affirm the judgment of conviction under Indictment No. 90–12–1960. We reverse the conviction of possession of a knife under Indictment No. 90–08–1321 and remand for further proceedings regarding that indictment.

KEEFE, J.A.D., dissenting.

I disagree with that part of the majority opinion which holds that Officer Nuccio's frisk of defendant was not justified.

In addition to the facts already set forth it is important to note that defendant was stopped by Nuccio about a block away from where he lived. Nuccio, according to defendant's companion, was aware that defendant lived nearby and therefore questioned defendant's explanation that he had ducked behind the tree only because he intended to urinate. Defendant's implausible explanation for his conduct is, in my view, additional support for Nuccio's suspicion that defendant had engaged in, or was about to engage in, criminal conduct. Furthermore, Nuccio testified that the area he was patrolling was a high crime area where he had previously effected over one hundred arrests. When all of these facts are added to Nuccio's knowledge that defendant had been convicted of weapons-related offenses in the past, I am of the view that "a reasonably prudent person would be warranted in the belief that his or her safety or that of others was in danger." *State v. Lund,* 119 *N.J.* 35, 45, 573 *A.2d* 1376 (1990). In determining the reasonableness of the officer's conduct in these circumstances I am mindful of an observation made by this court in *State v. Ransom,* 169 *N.J.Super.* 511, 405 *A.2d* 411 (App.Div.1979):

A police officer is not required by his occupation or the Constitution of the United States to take unnecessary risks in the performance of his duties or to refrain from the taking of "necessary measures to determine whether the person is in fact carrying a weapon [or the neutralizing of a] threat of physical harm." *Id.* at 522, 405 *A.2d* 411, quoting from *Terry v. Ohio,* 319 *U.S.* 1, 24, 88 *S.Ct.* 1868, 1881, 20 *L.Ed.2d* 889 (1968).

The officer's conduct must also be "measured by the temper and tempo of the times;" fully aware that police officers patrolling our highways alone at night have been the victims of criminal assaults.

*State v. Kennedy,* 134 *N.J.Super.* 454, 458–59, 341 *A.*2d 685 (App.Div.1975).

Although the Supreme Court in *State v. Thomas, supra,* held that the pat-down search in that case did not meet the objective standard of reasonableness, it suggested that the outcome might have been different had the officer known that the defendant was armed during his prior arrest.

> The tip alleged that defendant was in possession of an unidentified illegal drug. Therefore, defendant was not suspected of the violent criminal activity that would justify an "automatic" search. Further, the information had not indicated that defendant was armed, *and Officer Williams testified that he had no recollection of defendant being armed at his prior arrest.* There was no evidence of any kind adduced at the suppression hearing suggesting a basis for an objectively reasonable suspicion that defendant was armed.

> [110 *N.J.* at 684, 542 *A.*2d 912 (Citations omitted, emphasis added).]

Furthermore, the Court cited with approval *State v. Collins,* 479 *A.*2d 344 (Me.1984), a case in which the Maine Supreme Court upheld a pat-down search of a suspect whom the police knew had a prior weapons conviction.

Thus, I believe our Supreme Court would reject the rationale of *United States v. Hairston, supra,* and *State v. Giltner, supra,* cases upon which the majority relies to support its conclusion that "Nuccio's knowledge of defendant's prior record was insufficient, on this record, to convert defendant's furtive movement to an indicator that he was armed and dangerous."

In conclusion, I would affirm the judgments of conviction under review in all respects.