STATE OF CONNECTICUT *v.* NORBERTO ESCOBALES
(6183)

DALY, O'CONNELL and STOUGHTON, Js.

Argued June 14—decision released September 20, 1988

*Richard Emanuel,* for the appellant (defendant).

*Frederick W. Fawcett,* assistant state's attorney, with whom, on the brief, were *Donald A. Browne,*

state's attorney, *Gerard Eisenman,* assistant state's attorney, and *Nancy A. Freedman,* law student intern, for the appellee (state).

DALY, J. The defendant appeals from the judgment of conviction rendered after he had entered a conditional plea of nolo contendere to a charge of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-277 (a). He claims that the trial court erred (1) in denying his motion to suppress certain evidence allegedly obtained beyond the permissible scope of a frisk following a noncustodial traffic stop, and (2) in refusing to order the production of the cocaine and the paper bag container seized from under his shirt. We find no error.

The factual situation is not in dispute. On July 22, 1986, at approximately 11 p.m., Bridgeport police officers Jesus Ortiz and Philomena Lula were patrolling the north end of the city when they observed a motorcycle go through a stop sign on Noble Avenue. As they proceeded to follow the motorcycle, which was being operated erratically, the officers noticed that a tail light was out. After it proceeded through another stop sign, the officers decided to stop the motorcycle on the basis of the motor vehicle violations they had observed. The stop was made on River Street, eight to ten blocks from where the officers' original observations were made. The defendant began to speed away when the strobe lights of the patrol car were turned on. Upon approaching a busy intersection, however, the driver changed his mind and stopped.

As the operator got off the motorcycle, the officers observed him stuff something into his pants under his shirt. Ortiz, an officer with nine months experience in patrolling this particular area of the city, which is a high crime area known for drug activity, believed that the defendant had just stuffed a gun in his pants. He

proceeded cautiously toward the defendant with his hand on his holstered gun. Lula, also under the belief that the defendant had hidden a weapon, approached the defendant from behind with her hand on her holstered gun. Ortiz questioned the defendant as to what he had stuffed under his shirt and the defendant made no reply. At this point, Lula reached into the defendant's shirt and pulled out a crumpled brown bag. As Lula seized the bag, the defendant blurted out, "Give me a break, I found this. Didn't you see me pick this up at Berkshire and Knowlton?"

The paper bag was crumpled and approximately five to six inches long. Lula opened the bag, looked inside and discovered two rocks, approximately two to four inches in size, apparently of cocaine. The rocks were not round or heavy. The defendant was thereafter patted down and arrested for possession of a narcotics substance with intent to sell; two counts of stop sign violations in violation of General Statutes § 14-301 (c); operating with a defective tail light in violation of General Statutes § 14-96 (a); and misuse of plates in violation of General Statutes § 14-147.

Although a state toxicologist confirmed that the substance in the paper bag was cocaine, the bag and the cocaine were not introduced at the hearing.

In his first claim of error, the defendant argues that the police exceeded the right to frisk since they should have conducted a pat down before seizing the bag and its contents. Moreover, the defendant argues that even if the officer lawfully seized the bag and its contents, she should have felt it before opening it to ascertain whether it held a weapon. The defendant, in his argument, does not contest the police stop. He focuses on the intrusion by the officer. We find the defendant's argument unpersuasive.

Since *Terry* v. *Ohio,* 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968), courts have held that a police officer is justified in stopping a person for a reasonable time and in patting down the person as long as the officer has reason to believe that the person is armed and dangerous. In *Adams* v. *Williams,* 407 U.S. 143, 146, 92 S. Ct. 1921, 32 L. Ed. 2d 612 (1972), the United States Supreme Court held that it recognized "in *Terry* that the policeman making a reasonable investigatory stop should not be denied the opportunity to protect himself from attack by a hostile suspect. 'When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others,' he may conduct a limited protective search for concealed weapons." In *Williams,* the officer had received a tip from an informer that the defendant, who was seated in a nearby car, was carrying narcotics and had a gun at his waist. The officer had approached the car and asked the defendant to open the door. When the defendant rolled down his window, the officer reached into the car and removed a gun from the defendant's waistband. The court ruled that "[u]nder these circumstances the policeman's action in reaching to the spot where the gun was thought to be hidden constituted a limited intrusion designed to insure his safety, and we conclude that it was reasonable." Id., 148. " 'Fourth Amendment jurisprudence involves prudence for the police as well as fairness for the citizens. A police officer "need not defer . . . protective measures to the point of peril." *United States* v. *Coates,* 161 U.S. App. D.C. 334, 339, 495 F.2d 160, 165 (1974) (citation omitted).' " *United States* v. *Wilkerson,* 598 F.2d 621, 625 (D.C. Cir. 1978).

This case is similar to *Williams* in that the officer reached right for the bulky object believed to be a gun. Lula, however, was proceeding on her own knowledge

and skill as a police officer coupled with the actions of the defendant which she directly observed rather than relying on an informant's tip. The purpose of a limited search is to allow the police to pursue their investigation without fear of violence. Here, Lula made a limited protective search for a concealed weapon. A pat down was not necessary because Lula knew from her observation precisely where the defendant had concealed the bulky object. The ultimate question in fourth amendment cases is: Was the police officer's response to the given situation reasonable? In this case, Lula had reason to suspect, on the basis of her direct observations, that the defendant had just concealed a weapon. Moreover, courts must give due consideration to the experienced judgment of officers in reviewing their conduct. See *United States* v. *Wylie,* 569 F.2d 62, 68 (D.C. Cir. 1977), cert. denied, 435 U.S. 944, 98 S. Ct. 1527, 55 L. Ed. 2d 542 (1978). The record indicates that both officers had been with the Bridgeport police department for three years and that Ortiz had patrolled this particular area for the previous nine months. Ortiz had approximately sixty previous arrests in the area and had seized three or four handguns and four or five knives while making those arrests. Given these factors, the limited intrusion was indeed reasonable. Too often, police officers are mortally wounded following traffic violation stops. An officer should not be made to choose between his own safety and what could later be construed as an illegal search and seizure. Law enforcement personnel have enough responsibility and concerns confronting them when they approach a person they have pulled over, and we refuse to impose upon them a Hobson's choice of not making a limited intrusion where they believe a weapon is concealed when to do so greatly increases the risk that they will be shot. See *United States* v. *Jackson,* 652 F.2d 244, 249–50 (2d

Cir. 1981).[1] This court recently repeated the statement from *Williams* that " 'it may be the essence of good police work to adopt an intermediate response.' " *State* v. *D'Ambrosio,* 14 Conn. App. 309, 313, 541 A.2d 880 (1988). Although that statement deals with the stop element of a *Terry* stop, it is applicable to the patdown element under the facts here.

Under the circumstances here, it was reasonable for the officers to open the bag to ascertain its contents. See *United States* v. *McClinnhan,* 660 F.2d 500, 504 (D.C. Cir. 1981).

The defendant's second claim of error is that the trial court erred in denying the defendant's request to produce the cocaine and the paper bag. The trial court asked defense counsel if he thought that the cocaine and paper bag would be relevant if the size and description of the evidence became an issue. The court stated that, if so, the evidence would have to be produced. Defense counsel left the decision to the trial court and, in effect, did not take advantage of the offer to have the evidence produced. The trial court felt that the evidence had been fully testified to by both officers. Moreover, the toxicological report was put into evidence. There was no other testimony regarding the bag or its contents.

The trial court has wide discretion in ruling on the relevancy of evidence. 1 B. Holden & J. Daly, Connecticut Evidence § 67 (c) (1988). Our standard of review was firmly elaborated in *State* v. *Tirado,* 194 Conn. 89, 95, 478 A.2d 606 (1984). " ' "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . ." ' 'Reversal is

---

[1] In *United States* v. *Jackson,* 652 F.2d 244 (2d Cir. 1981), Judge Meskill analyzed the equally troublesome predicament found by officers approaching a suspected robber with their guns drawn.

required only where an abuse of discretion is manifest or where injustice appears to have been done. . . .' 'The aggrieved party, therefore, assumes a heavy burden when seeking to reverse the exercise of judicial discretion.' " Id. In this case, there was no such abuse of discretion.

There is no error.

In this opinion the other judges concurred.