**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Gerardo I. PONCE, Juan C. Gonzalez–Calas and Hipolito Reyes–Cotto, Defendants–Appellees.**

**No. 26, Docket 91–1140.**

United States Court of Appeals, Second Circuit.

Argued Aug. 29, 1991.

Decided Oct. 23, 1991.

Elliot H. Fuld, Bronx, N.Y. (Goldstein, Weinstein & Fuld, David J. Goldstein, of counsel), for defendant-appellee Ponce.

Robert G. Walsh, Blasdell, N.Y. (Walsh & Sampson, P.C., of counsel), for defendant-appellee Gonzalez–Calas.

John Patrick Pieri, Buffalo, N.Y. (Condon & Pieri, P.C., of counsel), for defendant-appellee Reyes–Cotto.

Susan M. Barbour, Buffalo, N.Y., Asst. U.S. Atty., W.D.N.Y. (Dennis C. Vacco, U.S. Atty., W.D.N.Y., of counsel), for plaintiff-appellant.

Before OAKES, Chief Judge,
FEINBERG and CARDAMONE, Circuit Judges.

FEINBERG, Circuit Judge:

This is an interlocutory appeal by the government from an order of the United States District Court for the Western District of New York, John T. Curtin, J., granting the motion of defendants Gerardo I. Ponce, Juan C. Gonzalez–Calas and Hipolito Reyes–Cotto for suppression of evidence seized during the search of a vehicle pursuant to a search warrant. For the reasons set forth below, we reverse and remand for further proceedings.

## Background

On the morning of March 10, 1988, Buffalo police responded to a call and came to the Fairfax hotel in Buffalo, New York. When the police arrived at Room 903, they were met by Julio and Martha Casamayor, who said that earlier that morning Mrs. Casamayor had been assaulted and threatened by two men, one of whom had a gun. The Casamayors identified the men as defendants Ponce and Gonzalez–Calas. The Casamayors also said, among other things, that they had previously overheard Ponce and Gonzalez–Calas say that they kept drugs and money in compartments in the side panels of their car, a 1982 two-tone green Monte Carlo. The Casamayors further said that the two men left the hotel that morning in their car. In addition, the Casamayors had a package of cocaine that Mr. Casamayor said Ponce had left in their apartment that morning. At the time they made these statements, the Casamayors were in custody for possession of the cocaine. Shortly thereafter, Narcotics Detective Lawrence Sadlocha arrived and advised the other officers that during the course of an ongoing investigation, he had observed Ponce and Gonzalez–Calas use the same Monte Carlo automobile in a drug trafficking operation. He had also previously seen the Monte Carlo in the hotel parking lot and noted its license plate number.

Based on this information, the police put out a "pick-up" order to stop and hold the vehicle and its five occupants.[1] The pick-up order stated that the occupants were considered armed and in possession of narcotics and money. A short time later, other police officers acting in response to the order forcibly stopped the car; with guns drawn they ordered the five occupants, including the three defendants on this appeal, to get out. The police officers told the five occupants they were under arrest and patted them down, finding nothing. The car was not searched at that time. The occupants were then taken to police headquarters and held there for five hours while Detective Sadlocha was obtaining a search warrant.

After preparing an application for a search warrant and locating a judge, Sadlocha attended an in camera hearing at which he and Julio Casamayor testified. Sadlocha and Casamayor told the judge most of the same information that formed the basis of the pick-up order. The judge found probable cause and issued a search warrant. The subsequent search of the car pursuant to the warrant revealed cocaine, two weapons and $27,000 in cash hidden in secret compartments behind side panels in the car.

Defendants were charged in state court with possession of contraband. After a suppression hearing, the state court judge found the search warrant invalid but upheld the search as incident to a proper

---

1. The record does not make clear why the pick-up order was for five individuals as opposed to two individuals.

arrest. The Appellate Division reversed, holding that both the search warrant and the search incident to arrest were invalid. *People v. Alonso,* 158 A.D.2d 988, 551 N.Y.S.2d 723 (1990). The court suppressed the evidence and dismissed the state indictment.

Thereafter, a multi-count federal indictment was obtained charging defendants with, among other things, conspiring to violate the narcotics laws and use of a firearm in connection with that conspiracy. Three counts relate to the seizure of evidence at issue here. Appellees moved to suppress the evidence and the parties agreed that the record of the state suppression hearing would suffice for purposes of the motion to suppress in federal court. The district judge granted the motion to suppress, finding invalid the search warrant and the search incident to arrest. The court also rejected the government's contention that defendants had no standing to move to suppress.

### Discussion

On its appeal, the government again argues that defendants did not meet their burden of showing that they had standing to complain of the search of the automobile. To mount a challenge to a search of a vehicle, defendants must show, among other things, a legitimate basis for being in it, such as permission from the owner. See *United States v. Ochs,* 595 F.2d 1247, 1253 (2d Cir.), cert. denied, 444 U.S. 955, 100 S.Ct. 435, 62 L.Ed.2d 328 (1979). Defendants who do not have a legitimate basis for being in a car that is not registered in the name of any of the car's occupants cannot object to the search of the vehicle. See *United States v. Smith,* 621 F.2d 483, 487 (2d Cir.1980), cert. denied, 449 U.S. 1086, 101 S.Ct. 875, 66 L.Ed.2d 812 (1981). In *United States v. Sanchez,* 635 F.2d 47 (2d Cir.1980), we found that the defendant had "demonstrated neither ownership of the [car], nor license from the owner to possess the [car]." Id. at 64. In addition, the panel noted that the registered owner of the car had not appeared below and that "it appears that

he was never located by the government." Id.

In the case before us, the record indicates that the registered owner of the car is Julio Alonso. As in *Sanchez,* it appears that the registered owner was never located by the government. Although the driver of the car was named Enrique V. Alonso, the record is barren of any showing that he was the same person as the registered owner.

Ponce contends that his right to be in the car was established because the police had observed him and Gonzalez–Calas use the car over a long period of time. The fact that defendants were observed using the car does not establish their right to use the car. For example, the car might have been stolen. More importantly, the burden is not on the police to show that defendants were in the car illegitimately. The burden is on the defendants to show a legitimate basis for being in the car, see *Sanchez,* 635 F.2d at 64, and that showing cannot be made simply by having been observed using the car.

We might at this point adopt the government's argument and reverse the district court's suppression order. However, special circumstances here suggest that it might be unduly technical to follow that course. The similarity of the last name of the driver of the car and the last name of the car's registered owner raises some question as to whether defendants had permission from the owner to use the car. This question apparently was not significant in the state court suppression hearing because the state judge ruled that defendants had standing under state law rules granting standing when certain possessory offenses are charged and a statutory presumption of possession applies. The possible difference in standing law in the federal and state systems may have been overlooked when the parties agreed that the state suppression hearing would suffice for purposes of the federal suppression claim.

Accordingly, we turn to the government's next argument that there was probable cause for the issuance of the

warrant to search the car and therefore the seized evidence should not have been suppressed. It should be noted at the outset that a state court's suppression of evidence is not binding on a federal court. See, e.g., *United States v. Davis*, 906 F.2d 829, 832 (2d Cir.1990). Under federal law, probable cause to search a place exists if the issuing judge finds a "fair probability that contraband or evidence of a crime will be found in a particular place" and a federal court must apply a "totality-of-the-circumstances analysis" in pursuing this inquiry. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). In addition, if there is probable cause to believe that particular things are located on particular property, then it is not necessary that the owner of the property be suspected of crime. See *Zurcher v. Stanford Daily*, 436 U.S. 547, 556, 98 S.Ct. 1970, 1976, 56 L.Ed.2d 525 (1978).

The facts before us concerning probable cause are not in dispute. Rather, the issue is whether those facts constitute probable cause. At an in camera hearing before the judge who issued the warrant, Julio Casamayor and Detective Sadlocha testified and Sadlocha also furnished an affidavit. Casamayor testified to the following: (1) he knew that two of the defendants, Ponce and Gonzalez–Calas, resided in Apartment 103 at the Fairfax hotel and he had previously stayed at their apartment; (2) he had seen cocaine and money in their apartment approximately two weeks before, and they used to store money in the stove; (3) he heard Ponce and Gonzalez–Calas state that they store their cocaine in side panels in the rear seat of their car; (4) Ponce and Gonzalez–Calas had come the day before from Florida, have a boat and traffic cocaine from Miami; (5) Gonzalez–Calas, who had a forty-five caliber gun, came to his apartment that morning, slapped his wife around, threatened her and then left with Ponce; (6) after they left, Casamayor's wife brought in a pillow filled with cocaine that Ponce and Gonzalez–Calas had left.

The basis of Casamayor's knowledge stemmed from firsthand observations, and his reliability was supported by his detailed description of Ponce's and Gonzalez–Calas's activity. Detective Sadlocha added further information and corroborated part of Casamayor's testimony. Sadlocha told the judge that Ponce and Gonzalez–Calas operated a 1982 Monte Carlo, and that Sadlocha had observed them use such a car on several occasions over the past two weeks, and as recently as the previous day, as part of a narcotics trafficking operation. In examining the totality of the circumstances, we find that there were enough facts to constitute probable cause to issue a search warrant for the search of the car, even though the occupants in the car were not necessarily suspected of crime.[2]

■ Defendants argue that the information given by Mr. Casamayor was stale. However, the assault on Mrs. Casamayor occurred that morning, as did the delivery of cocaine, and the other information concerning the car had occurred within the past two weeks. Detective Sadlocha's observations concerned events that had occurred on the previous day and over the past two weeks. As we have previously held, information that is two weeks old is not necessarily stale, especially when it concerns a possible ongoing narcotics trafficking operation. See *Rivera v. United States*, 928 F.2d 592, 602–03 (2d Cir.1991).

■ Defendants also contend that the initial stop of the car was improper. When the police sent out the pick-up order, they had in their possession the same facts that formed the basis for the search warrant. In fact, the police possessed even more information than was before the judge who issued the warrant. Sadlocha knew that Gonzalez–Calas was listed on the lease for Room 103 at the Fairfax, and that the Casamayors said that Ponce and Gonzalez–Calas had left the Fairfax shortly after the assault of Mrs. Casamayor in a 1982 two-

---

**2.** We note that the judge who issued the warrant was not informed that the defendants had already been stopped and were in custody. While this fact does not change our finding that there was probable cause to issue the search warrant, we do not condone the omission of this important information.

tone green Monte Carlo. Also, Sadlocha knew the license plate number of the Monte Carlo through his narcotics investigation. Therefore, despite defendants' contention that the initial stop was improper, the police had probable cause to stop the car itself.

■ Defendants also argue that the pick-up order was not based on, and made no reference to, any articulable facts supporting even reasonable suspicion. The pick-up bulletin did not need to articulate such facts because the validity of the stop of the car turns only on "whether the officers who *issued* the flyer possessed probable cause," and not on whether the officers who made the stop had all the specific facts concerning probable cause. *United States v. Hensley*, 469 U.S. 221, 231, 105 S.Ct. 675, 681–82, 83 L.Ed.2d 604 (1985) (emphasis in original).

■ However, the detention of defendants for five hours seems to have been improper. Defendants argue that this detention tainted the subsequent seizure of the evidence. We find that the intervening apparently illegal detention of defendants did not taint the subsequent search because the police later obtained a valid search warrant. Thus, the search was independent of the arrest. The case here is similar to *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), in which the Court held that the illegality of an initial entry does not taint a subsequent search pursuant to a valid search warrant that was issued wholly on information known to the police before the initial entry. See id. at 814, 104 S.Ct. at 3390. In addition, the Supreme Court has noted that when police have probable cause to search a particular automobile for particular articles, one of the options open to them is to seize the car and hold it "without a warrant for whatever period is necessary to obtain a warrant for the search." *Chambers v. Maroney*, 399 U.S. 42, 51, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419 (1970).

■ Our holding is without prejudice to defendants' pursuit of whatever civil claims they may have as a result of their apparently unlawful detention for five hours while the police obtained a search warrant. It appears that the proper procedure, after stopping the car and patting down the defendants, would have been to give defendants a receipt for the car and then to release them. This procedure was followed in *United States v. Hooper*, 935 F.2d 484 (2d Cir.1991), in which an airline passenger was given a receipt for his seized suitcase and then released. *Id.* at 488.

■ In addition, our holding should not be read as sanctioning police conduct intended to hold a suspect or a car without probable cause while the police attempt to gather additional information. Such conduct would be a clear violation of the Fourth Amendment. See *Dunaway v. New York*, 442 U.S. 200, 215–16, 99 S.Ct. 2248, 2258, 60 L.Ed.2d 824 (1979). We hold only that if the police have probable cause to search a car, they may hold that car for a reasonable time while they obtain a search warrant based on facts known to them prior to the initial seizure.

We have considered all of defendants' arguments and find them without merit. The judgment of the district court is reversed and the case is remanded for further proceedings.