[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO SUPPRESS
Michael J. Weber for plaintiff.
Robert Burke for defendant.
On January 2, 1994 at approximately 2:35 a.m., the defendant was stopped for speeding on I-95 in Milford, Connecticut. Trooper Fosque of the Connecticut State Police approached the defendant's car and requested that the defendant produce his license, registration and insurance card. Defendant produced his license and restoration notice and then removed "a bunch of papers" from the glove box. The trooper observed that the defendant's hands were "shaking" and he appeared to be quite nervous as he flipped through the papers while attempting to locate the registration. In fact, the trooper observed the defendant pass by the registration several times, requiring the trooper eventually to point to the registration.
After securing the requested documents, the trooper told the defendant to remain in his car, and the trooper returned to the cruiser to complete his paperwork. He ran a stolen motor vehicle check and a suspension check and learned that the defendant's car was not stolen and that the defendant was not under suspension. A record check, however revealed that defendant had been arrested on a narcotics charge (sale of cocaine) in 1990. CT Page 6850-O
The trooper had noticed a large duffel bag on the rear seat on his first approach to the defendant's car. On returning to the vehicle, the trooper issued the infraction to the defendant and asked him if he (defendant) "had anything illegal" in the vehicle. The defendant stated that he did not. The trooper next asked what was in the duffel bag. The defendant responded that it contained his clothes. The defendant asked if the trooper wanted to "look inside the duffel bag." At this time, the trooper directed the defendant to step out of the car. Before opening the rear door of the car, the trooper advised: "For my own protection, I'm going to pat you down for any knives, needles or guns." The defendant placed his hands on the roof of the car and the trooper, from behind, "reached around and I grabbed onto a hard object in his waistband. And at that point, we both kind of froze, and you know, we were only a few inches apart and I said, `What is that?', and he said, `It's a nine.'" A "nine" in this case was a "CZ model 75 9 mm. pistol, color black, ser. no. 122801." Examination of the gun disclosed one round in the chamber and 14 rounds in the magazine. The weapon was off safety and ready to fire. The defendant is charged with violation of Connecticut General Statutes § 29-35(a), carrying a pistol without a permit, and § 29-38, illegal possession of a weapon in a motor vehicle.
The defendant's motion to suppress is grounded upon his claim that the pat-down conducted by the trooper violated the defendant's rights under the Fourth, Fifth, Sixth and Fourteenth Amendments of the United States Constitution and Article 1, Sections 7, 8 and 9
of the Constitution of the State of Connecticut, as well as Connecticut General Statutes § 54-33f. The court does not agree.
The United States Supreme Court has said that when an arrest is made "it is reasonable for the arresting offer to search the person arrested in order to remove any weapons that the [arrestee] might seek to use in order to resist arrest or effect his escape."Chimel v. California, 395 U.S. 752, 763, 89 S.Ct. 2034,23 L.Ed.2d 685 (1969) cited in State v. Dukes, 209 Conn. 98, 116 (1988). It is clear that the Supreme Court in Chimel was speaking of custodial arrests which is not the case here where the stop was one for speeding. This case, however, presents an equally compelling issue, that is, may an officer following a stop for a motor vehicle violation and about to conduct a consent search of the defendant's vehicle or its contents, first conduct a pat-down so as to remove the threat of a concealed weapon which the defendant might seek to use against the officer in question? "Certainly, it would be CT Page 6850-P unreasonable to require that police officers take unnecessary risks in performance of their duties." Terry v. Ohio, 392 U.S. 1, 23,88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).
In State v. Escobales, 16 Conn. App. 272, 276 (1988), the court recognized the need to enhance a policeman's safety during a routine motor vehicle stop, the court stating that "[t]oo often, police officers are wounded following traffic violation stops." Id. at 276.
Our Supreme Court in State v. Dukes, supra, 122, added that "[w]here an operator is stopped by police for a traffic violation, the officer, in order to protect himself, has the right to go beyond a mere pat-down in conducting a search of the operator's person for weapons." If going "beyond a mere pat-down" has been sanctioned where a stop is made for a traffic violation, the mere pat-down in the instant case where a deadly weapon was discovered must be approved. The defendant consented to a search of his duffel bag located in the back seat of his car. The court believes that before undertaking such search which would have required the trooper's eyesight and concentration to be directed away from the defendant and toward the duffel bag and its contents, the trooper had the right to pat-down the defendant for concealed weapons capable of inflicting serious injury or death. Such a minimally intrusive act when balanced against the risk meets constitutional muster.
Therefore, the defendant's motion to suppress is hereby denied.
Skolnick, J.